IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEONARD MADISON, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:22-cv-173–HEH
)
MEDIKO CORRECTIONAL )
HEALTHCARE, *et. al*, )
)
        Defendants. )

## MEMORANDUM OPINION
### (Granting Defendants' Motion for Summary Judgment)

Plaintiff Leonard Madison ("Plaintiff"), a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. The matter is proceeding on Plaintiff's Particularized Complaint (the "Complaint," ECF No. 18), filed on November 14, 2022. Plaintiff alleges that he received inadequate medical care while detained at the Portsmouth City Jail ("the Jail"). (*Id.* at 1–4.) Plaintiff names as Defendants: Mediko Correctional Healthcare ("Mediko"); Paul Bell ("Bell"), the Head of the Jail Medical Department; Dr. Cheshire; Nurse Goode (or "Goode-Alstork"), the Head Nurse; Nurse W. Minor ("Nurse Minor"); Nurse Harper; and Lieutenant Felio (collectively, "Defendants").[1] (*Id.* at 1, 3.) The matter is before the Court on Defendants' Motion for

---

[1] By Memorandum Opinion and Order entered on April 20, 2023 (ECF Nos. 29, 30), the Court dismissed without prejudice all claims against Nurse Harper and Lieutenant Felio because Madison failed to timely serve them.

Summary Judgment (ECF No. 36), filed on July 6, 2023, and the Court's responsibility to screen complaints under 28 U.S.C. § 1915(e)(2).[2]

## I. Summary of Relevant Allegations and Claims

At the time relevant to his present claims, Plaintiff was fifty-seven (57) years old and had high blood pressure. (Compl., at 1.) Around 8:30 a.m., on September 5, 2021, Plaintiff began to experience headaches, a fever, chills, and body aches. (*Id.*) Plaintiff notified the floor officer, Deputy Mullins, of his ailments. (*Id.*) Deputy Mullins stated that he would inform the medical department. (*Id.*)

Around 1:00 p.m., Plaintiff began to experience nausea, in addition to the other symptoms. (*Id.*) Plaintiff again notified Deputy Mullins. (*Id.*) Deputy Mullins said he had informed the Medical Department and was told that they would get to Plaintiff and had Plaintiff fill out a sick call form. (*Id.*) Nevertheless, Plaintiff went all of September 5, 2021, without receiving medical care. (*Id.*) It was later determined that Plaintiff had COVID-19. (*Id.*)

On September 17, 2021, Plaintiff was moved back to general population without being tested to see if he was free of COVID-19. (*Id.* at 2.)[3] Thereafter, Plaintiff requested a COVID-19 test from Dr. Cheshire. (*Id.*) Dr. Cheshire initially declined, but

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court employs the spelling of the parties' names utilized in the Motion for Summary Judgment. The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions. The Court omits any secondary citations from the quotations to the parties' submissions.

[3] Apparently, prior to this date, Plaintiff was in some form of isolation. (ECF No. 40, at 1–2.)

eventually provided the test and Plaintiff tested positive for COVID-19. (*Id.*) Plaintiff was then moved to a medical isolation cell. (*Id.*)

On September 30, 2021, Plaintiff asked Nurse Harper to provide him with a COVID-19 test prior to being returned to the regular population. (*Id.*) Nurse Harper refused. (*Id.*) "She said 14 days in quarantine clears a person of COVID." (*Id.*) On October 1, 2021, Plaintiff was returned to the regular population without being provided with a COVID-19 test. (*Id.*)

On December 3, 2021, Plaintiff requested a COVID-19 test. (*Id.* at 3.) Defendant Bell asked why Plaintiff wanted to be tested. (*Id.*) Plaintiff explained that inmates from quarantine had been moved to his housing unit. (*Id.*) Thereafter, Plaintiff stated he had a cold and lost his appetite. (*Id.*) The COVID-19 test was administered, but Bell did not tell Plaintiff the result. (*Id.*) Plaintiff was then moved to medical isolation. (*Id.*)

Plaintiff subsequently requested the results of his test from Bell. (*Id.*) Bell responded that Plaintiff had been told his results and stated Plaintiff was housed in isolation because of his symptoms. (*Id.*) Bell did not provide Plaintiff with any medication. (*Id.*)

Plaintiff asked Lieutenant Felio for a grievance form to grieve this matter. (*Id.*) Lieutenant Felio stated that medical issues are not grievable. (*Id.*) Plaintiff was released from isolation on December 17, 2021. (*Id.* at 4.)

Based on the foregoing allegations, Plaintiff makes the following claims against the remaining Defendants:

3

Claim One            Defendants Mediko, Bell, Nurse Goode, Dr. Cheshire,[4] and Nurse Minor violated Plaintiff's constitutional rights by failing to provide Plaintiff adequate medical care for COVID-19 on September 5, 2021. (*Id.* at 1–2.)

Claim Two            Defendants Mediko, Bell, and Nurse Harper violated Plaintiff's constitutional rights by returning Plaintiff to the general population on September 30, 2021, without administering a COVID-19 test. (*Id.* at 2.)

Claim Three           On December 3, 2021, Defendants Mediko and Bell violated Plaintiff's constitutional rights when Bell failed to inform Plaintiff of the results of his COVID-19 test and failed to provide Plaintiff with medication for his symptoms. (*Id.* at 3.)

Plaintiff also contends the Defendants' actions amounted to neglect or medical malpractice. Because the Court dismisses all of Plaintiff's constitutional claims, his state-law claims will be dismissed without prejudice.

## II. Plaintiff Fails to State a Claim against Mediko

### A. Review under 28 U.S.C. § 1915(e)(2)

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) (internal quotations omitted). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

---

[4] Plaintiff fails to specifically articulate the basis for Dr. Cheshire's purported liability.

4

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (internal citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (internal citation omitted). A Plaintiff cannot satisfy this standard with a complaint containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (internal citation omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (internal citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

5

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Lastly, while the Court liberally construes *pro se* complaints, *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B. Analysis

A private corporation, such as Mediko, cannot be held liable "for torts committed by [its employees] when such liability is predicated solely upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted).[5] Instead, "a private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted) (emphasis in original). An unconstitutional official policy or custom

---

[5] Principles of § 1983 municipal liability apply equally to a private corporation that is deemed to be acting under color of state law. *See Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) (citation omitted)

6

can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens[;]" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 371 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). A plaintiff must "identify the offending [official] policy [or custom] with precision." *Carter*, 164 F.3d at 218. Here, Plaintiff fails to identify any official policy or custom of Mediko that he maintains led to the alleged deprivation of his rights. Accordingly, all claims against Mediko will be DISMISSED.

### III. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate

7

'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former FED. R. CIV. P. 56(c), 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448) (emphasis omitted). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submitted Plaintiff's medical records and affidavits from Dr. Cheshire, Bell, Nurse Goode-Alstork, and Nurse Minor. In response, Plaintiff has submitted some records from the Jail. The Court refers to the parties' submissions by their CM/ECF designation.

Of course, the facts offered by affidavit or sworn declaration must also be in the form of admissible evidence. *See* FED. R. CIV. P. 56(c)(4). In this regard, the statements in the affidavit or sworn declaration "must be made on personal knowledge, set out facts

8

that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment.

### IV. Pertinent Facts

Plaintiff was booked into Jail on September 1, 2021, and medical staff performed a screening on September 2, 2021. (ECF No. 37-1 ¶ 7.) Plaintiff was alert and oriented and his vital signs were stable except for a slightly elevated blood pressure. (*Id.*) Plaintiff stated he had a prescription for high blood pressure medication, but he had not filled it in eight (8) months. (*Id.*)

On September 5, 2021, Plaintiff submitted a sick call request wherein he stated, "I told the deputy earlier I was sick, I have chills, body ache, coughing, and fever, and my head ach[es]." (ECF No. 41-1 at 1.) On that same day, at 9:05 p.m., someone on the Jail medical staff with the initials D.H., marked the sick call request "routine" and assigned the matter to nurse sick call. (*Id.*) On September 6, 2021, Nurse Goode-Alstork, informed Plaintiff, "you are being started on Covid medication regime." (*Id.*) Nevertheless, none of Defendants received any information regarding Plaintiff on September 5, 2021. (ECF No. 37-1 ¶¶ 6–7; ECF No. 37-2 ¶¶ 6–7; ECF No. 37-3 ¶¶ 6–7; ECF No. 37-4 ¶¶ 6–7.)

On September 6, 2021, Plaintiff demanded a COVID-19 test after he learned that an inmate on his block had tested positive for COVID-19. (ECF No. 37-2 ¶ 8.) However, Plaintiff "presented with no noticeable symptoms, and at the time, the protocol was to administer COVID-19 tests to symptomatic patients only. Nevertheless, as a preventative measure, staff instituted the COVID-19 protocol for all patients on the block: a medication regimen including zinc, Vitamin C and D, and alternating Tylenol and Motrin." (*Id.*)

On September 7, 2021, Dr. Cheshire prescribed medication to treat Plaintiff's high blood pressure. (ECF No. 37-1 ¶ 9.)

On September 16, 2021, Plaintiff had an appointment with Dr. Cheshire regarding his high blood pressure. (*Id.* ¶ 10.) Nurse Goode-Alstork was present during the appointment. (*Id.*) During the visit, Plaintiff demanded a COVID-19 test. (*Id.*) Although he had no symptoms, Dr. Cheshire agreed to provide the test. (*Id.*) Nurse Goode-Alstork administered the test and Plaintiff tested positive for COVID-19. (*Id.*) Dr. Cheshire ordered a chest x-ray to better assess his condition. (*Id.*) Plaintiff was moved to a location at the Jail where COVID-19 positive patients were housed. (*Id.*) Plaintiff's chest x-ray revealed moderate, bilateral pneumonia. (ECF No. 37-2 ¶ 10.)

On September 23, 2021, Dr. Cheshire prescribed mucus relief medication to be given daily to Plaintiff. (ECF No. 37-1 ¶ 11.)

At his 14-day assessment, on October 2, 2021, Plaintiff's overall health was good and he voiced no complaints. (*Id.* ¶ 12.)

On October 5, 2021, Nurse Goode-Alstork and Dr. Cheshire examined Plaintiff. (*Id.* ¶ 13.) Plaintiff denied having any pulmonary symptoms and did not have a cough. (*Id.*) Plaintiff's "lungs were clear, he was afebrile, his vital signs were stable, and he was in no acute distress." (*Id.*) Dr. Cheshire planned on monitoring Plaintiff and prescribing antibiotics if needed. (*Id.*) Dr. Cheshire ordered bloodwork, the results of which were normal. (*Id.*)

On October 6, 8, and 11, 2021, Plaintiff refused his mucus relief medication. (*Id.* ¶ 14.) On December 7, 2021, Plaintiff submitted a request insisting that he had requested a COVID-19 test on December 3, 2021. (ECF No. 37-2 ¶ 16.) Defendant Bell has no knowledge of, and could not find any record of, a request from Plaintiff from December 3, 2021. (*Id.*) Nevertheless, Bell informed Plaintiff that the Jail did not conduct COVID-19 tests on individuals who were asymptomatic. (*Id.*) Plaintiff then indicated he was coughing and had lost his appetite. (*Id.*) Bell administered a test, the result of which was negative. (*Id.*)[6] Nevertheless, the Jail's protocol required patients to be housed according to their symptoms, even in the absence of a positive test. (*Id.*) Therefore, Plaintiff was relocated to an area of the Jail reserved for symptomatic inmates. (*Id.*) Plaintiff never exhibited severe COVID-19 symptoms. (*Id.* ¶ 19.)

## V. Analysis

Because Plaintiff apparently was a "'pretrial detainee and not a convicted

---

[6] Bell does not recall if he informed Plaintiff of the results of the test at that time, but asserts that it was his habit and practice to do so. (ECF No. 37-2 ¶ 17.) Nevertheless, on December 9, 2021, Bell told Plaintiff about the negative result in response to a request from Plaintiff. (*Id.* ¶ 18.)

11

prisoner,' the Fourteenth Amendment, and not the Eighth Amendment, governs his claim[s]." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). In the wake of *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Fourth Circuit recently clarified what pretrial detainees must demonstrate with respect to claims alleging that jail officials failed to appropriately respond to their medical needs. *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Specifically, pretrial detainees must demonstrate:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* The Fourth Circuit explained:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, "objectively unreasonable," 576 U.S. at 397: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."

*Id.* (parallel citations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

In Claim One, Plaintiff contends that Defendants violated his rights when they failed to provide him with any medical care for COVID-19 on September 5, 2021. Plaintiff, however, fails to demonstrate that Dr. Cheshire, Bell, Nurse Goode-Alstork, or

Nurse Minor ("the Medical Defendants") "knew or should have known . . . that [Plaintiff] had that condition" on September 5, 2021. *Id.* Further, after it was discovered that Plaintiff potentially had COVID-19, because of his exposure and his subsequent test, Dr. Cheshire and Nurse Goode-Alstork provided Plaintiff with appropriate care. Plaintiff fails to demonstrate that any of the Medical Defendants "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed" to Plaintiff. *Id.* Accordingly, Claim One will be DISMISSED.

In Claim Two, Plaintiff faults Bell and Nurse Harper for returning him to the regular population on September 30, 2021, without first administering a COVID-19 test to ensure he was no longer contagious. While an argument could be made that this omission posed a risk to inmates in the regular population, Plaintiff fails to explain how this omission harmed him. *Id.* Moreover, the medical evidence indicates that, as of October 2, 2021, Plaintiff's overall health was good, (ECF No. 37-1 ¶ 12), and by October 5, 2021, his "lungs were clear, he was afebrile, his vital signs were stable, and he was in no acute distress," (*id.* ¶ 13). Because Plaintiff fails to demonstrate that his rights were violated, Claim Two will be DISMISSED.

In Claim Three, Plaintiff asserts that Bell violated his rights in December 2021, when he failed to inform Plaintiff of the results of his COVID-19 test and did not provide medicine for Plaintiff's symptoms. The record reflects that Bell informed Plaintiff that his COVID-19 test was negative on December 9, 2021. Plaintiff fails to demonstrate that he was harmed by any delay in providing him with the results of a negative COVID-19 test. *See Short*, 87 F.4th at 611. Next, Plaintiff complains that he was not provided with

any medicine for his cough and loss of appetite. Plaintiff fails to demonstrate that either of the conditions "posed a substantial risk of serious harm" if left untreated. *Id.*; *see Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (observing that a prison medical staff's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not . . . violate the Constitution."). Accordingly, Claim Three will be dismissed.

## VI. Conclusion

Plaintiff's constitutional claims will be dismissed with prejudice. "Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, certainly[ ] if the federal claims are dismissed before trial . . . the state claims should be dismissed without prejudice." *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (citations and internal quotations omitted). Accordingly, Plaintiff's state law claims will be dismissed without prejudice. The Motion for Summary Judgment (ECF No. 36) will be granted. The action will be dismissed.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 11, 2024
Richmond, Virginia